## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| PRYSMIAN CABLES AND SYSTEMS USA, INC.<br><br>Plaintiff,<br><br>vs.<br><br>BME TRUCKING, INC. and BRIAN ENELL,<br><br>Defendants. | Case No. **3:23-cv-4311-SAL**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

For its Complaint against BME Trucking, Inc. ("BME") and Brian Enell ("Enell") (collectively "Defendants"), Prysmian Cables and Systems USA, LLC ("Prysmian") alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Prysmian is a Delaware Limited Liability Company with its principal place of business located in Kentucky.

2. BME is a South Carolina Corporation with a principal place of business at 289 Zenker Road, Lexington, SC 29072.

3. Enell is an individual residing at 348 Kenwood Dive, Lexington, SC 29072.

4. This Court has subject matter jurisdiction over Prysmian's claims pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between Prysmian and the Defendants.

5. Venue is proper in this District Court under 28 U.S.C. § 1391 because Defendants reside in this District and a substantial amount of the events giving rise to the claim, namely the

breaches of contract, fraud, tortious interference, and unfair trade practices of Defendants, took place in this District.

## FACTS

6. Prysmian is in the business of manufacturing commercial power and telecommunication cables (the "Cables"), among other things.

7. The Cables are sometimes shipped using large metal reels (the "Reels"), which are returnable to Prysmian.

8. For at least the last seven years, Prysmian and BME were parties to a service agreement whereby BME would provide shipping services to deliver the Cables to Prysmian's customers and the Reels back from Prysmian's customers. The service agreement was revised from time to time to accommodate increased shipping costs. The individual shipments were memorialized by bills of lading for each shipment.

9. The process to return the Reels starts with a customer calling Transplace LP ("Transplace") to indicate a load of Reels is ready to be returned.

10. Transplace then builds the shipment in its software for tracking.

11. Transplace also transmits the order to Continental Traffic Service, Inc. ("CTSI") for payment.

12. Transplace's software allows the loads to be tracked en route from Prysmian's customers to Prysmian both automatically and manually.

13. Prysmian at times uses third-party facilities to store the Reels, including but not limited to Palmetto State Transportation in Greenville, South Carolina.

14. Upon receipt of the Reels, the bills of lading are signed by the receiver, which at times is an individual at the third-party facilities.

15. The carrier would then submit the signed bill of lading to CTSI to process the payment within thirty (30) days.

16. Starting by at least early 2019, and continuing until as recently as July 5, 2023, Defendants began deviating from the process outlined above in order to process shipments of Reels that were not actually being shipped.

17. Enell began contacting Transplace himself and indicating that a Prysmian customer had contacted him that a shipment of Reels was ready for pickup.

18. Transplace would then build the shipment of Reels in its software and contract CTSI for payment.

19. Enell would then use the Transplace software to manually change the tracking information for the fraudulent shipment of Reels.

20. Enell would then sign the bills of lading himself with the name "Ashley Stewart," among others, and represented that the Reels were received by a third-party facility, including Palmetto State Transportation.

21. Enell chose the name Ashley Stewart because Ashley Stewart is a Prysmian employee and so the name would not set off red flags with CTSI.

22. Ashley Stewart does not, and has never, worked at any third-party facility, including Palmetto State Transportation.

23. These bills of lading also included false information including, *inter alia*, serial numbers for Reels, customer information, and weight of the shipment.

24. Enell would then submit the fraudulent bills of lading along with Invoices containing the same fraudulent information to CTSI for payment.

25. In order to further the fraudulent scheme, Enell used a factoring company, Match Factors, to obtain immediate payment.

26. Enell assigned BME's right to payment of the full fee within thirty (30) days to Match Factors in exchange for immediate payment of 95% of the fee by Match Factors.

27. Using the above described scheme, Defendants collected fees for hundreds of fraudulent shipments, as often as five (5) times per week, in the amount of millions of dollars over the course of at least nine (9) months.

28. On or about July 11, 2023, Enell sent Prysmian an email stating that BME was concluding and winding up its operations.

29. BME has ceased being licensed as a carrier under the U.S. Department of Transportation and is attempting to cancel its insurance.

30. Upon information and belief, Defendants are ceasing operations in an attempt to hide their fraudulent scheme and abscond with its ill-gotten gains from Prysmian.

### FOR A FIRST CAUSE OF ACTION AS TO ALL DEFENDANTS
*FRAUD AND MISREPRESENTATION*

31. Prysmian incorporates by reference the allegations of paragraphs 1-30 of its Complaint as though fully set forth herein.

32. Starting by at least early 2019, and continuing until July 2023, Defendants made representations to Prysmian and Transplace that a Prysmian customer had reached out to indicate a load of Reels was ready for pickup.

33. Defendants also represented that shipments of Reels were in transport from a Prysmian customer to a third-party facility by manually entering tracking information into the Transplace software.

34. Defendants also made representations to Prysmian and its agents, including CTSI, that the loads of Reels had been delivered and signed for by representatives of third-party facilities, including Palmetto State Transportation.

35. The above representations were false.

36. Defendants knew the representations were false, but made them with the intent to obtain unearned shipping fees from Prysmian.

37. Defendants intended Prysmian to rely on the representations to obtain payment for the fake shipments through CTSI.

38. Prysmian did not know that Defendants' representations were false.

39. Prysmian reasonably relied on Defendants' representations.

40. Prysmian had a right to rely on Defendants' representations.

41. As a result of Defendants' false representations, Prysmian has been damaged in an amount to be proven at trial but believed to be in excess of $4,500,000.

## FOR A SECOND CAUSE OF ACTION AS TO BME
### *BREACH OF CONTRACT*

42. Prysmian incorporates by reference the allegations of paragraphs 1-41 of its Complaint.

43. There was a valid contract between Prysmian and BME.

44. BME breached the contract by *inter alia* charging for shipments of Reels that were not actually transported from Prysmian's customers.

45. As a result of BME's breach of the contract, Prysmian has been damaged in an amount to be proven at trial but believed to be in excess of $4,500,000.

**FOR A THIRD CAUSE OF ACTION AS TO ENELL**
*TORTIOUS INTERFERENCE WITH A CONTRACT*

46. Prysmian incorporates by reference the allegations of paragraphs 1-45 of its Complaint.

47. There was a valid contract between Prysmian and BME.

48. Enell knew of the contract between Prysmian and BME.

49. Enell intentionally interfered with the contract by *inter alia* initiating fake shipments of Reels from Prysmian customers, providing false tracking information in Transplace's software, and submitting false bills of lading to acquire payment.

50. Upon information and belief, Enell was acting outside of his scope as officer and/or director of BME when interfering in the contract between Prysmian and BME.

51. Enell had no justification for interfering with the contract between Prysmian and BME.

52. As a direct and proximate result of Enell's tortious interference with the contract between Prysmian and BME, Prysmian suffered damages in an amount to be proven at trial but believed to be in excess of $4,500,000.

**FOR A FOURTH CAUSE OF ACTION AS TO ALL DEFENDANTS**
*INJUNCTIVE RELIEF*

53. Prysmian incorporates by reference the allegations contained in paragraphs 1-52 of its Complaint.

54. On or about July 11, 2023, Enell sent Prysmian a letter indicating BME was ceasing operations.

55. This notification suggests that BME intends to liquidate its assets and dissipate the proceeds in order to avoid further obligation or liability to Prysmian despite the fact that Defendants know of its fraud on Prysmian.

56. BME has ceased being licensed as a carrier under the U.S. Department of Transportation and is attempting to cancel its insurance.

57. BME intends to liquidate its assets and distribute them to Enell, so that BME will become "judgment-proof" and defraud Prysmian, its creditor.

58. Enell further intends to abscond with the fraudulently obtained funds from Prysmian and other assets to defraud Prysmian, his creditor.

59. Prysmian has a high likelihood of success on the merits of its claims against Defendants.

60. If BME and/or Enell are allowed to distribute or otherwise dispose of their assets, Prysmian will suffer irreparable harm because Defendants will not be able to satisfy any judgment against them.

**FOR A FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS**
*PREJUDGMENT ATTACHMENT PURSUANT TO S.C. CODE ANN. §15-19-10*

61. Prysmian incorporates by reference the allegations contained in paragraphs 1-60 of its Complaint.

62. Under South Carolina Code Annotated §15-19-10 this Court may order an attachment of Defendants' property upon a finding that Defendants are "about to remove any of his or its property from this State, or has assigned, disposed of or secreted or is about to assign, dispose of or secrete any of his or its property with intent to defraud creditors . . . ."

63. On or about July 11, 2023, Enell sent Prysmian an email indicating that BME was ceasing operations.

7

64. BME has ceased being licensed as a carrier under the U.S. Department of Transportation and is attempting to cancel its insurance.

65. BME intends to liquidate its assets and distribute them to Enell, so that BME will become "judgment-proof" and defraud Prysmian, its creditor.

66. Enell further intends to abscond with the fraudulently obtained funds from Prysmian and other assets to defraud Prysmian, his creditor.

67. If this Court finds that injunctive relief under Count Four of this Complaint is inappropriate, then Prysmian is entitled to an Order for prejudgment attachment of Defendants' property to protect Prysmian from being defrauded by Defendants and to prevent Defendants from distributing or disposing of their assets forever beyond the reach of Prysmian.

### FOR A SIXTH CAUSE OF ACTION AS TO ALL DEFENDANTS
*VIOLATION OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT*
*S.C. CODE ANN. § 39-5-10 et seq.*

68. Prysmian incorporates by reference the allegations contained in paragraphs 1-67 of its Complaint.

69. This cause of action is brought pursuant to the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.* (hereinafter the "Act"). Pursuant to Section 39-5-20(a) of the Act, "[u]nfair methods of completion and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

70. BME's course of dealings with Prysmian, as described herein, constitute trade within the meaning of S.C. Code Ann. § 39-5-20(a), including the parties' performance under the service agreement discussed above.

71. The activities of Defendants, which were carried out through misrepresentation, bad faith, concealment, and fraud, as outlined above, were unfair and deceptive acts and willful

violations of the Act. This includes, without limitation, intentionally including false information on and otherwise manipulating bills of lading to deceive Prysmian and CTSI.

72. As a result of said wrongful activities, Plaintiff has sustained an ascertainable loss of money, which it is entitled to recover herein, trebled, along with attorneys' fees and costs.

### FOR A SEVENTH CAUSE OF ACTION AS TO BME
*BREACH OF CONTRACT ACCOMPANIED BY FRAUDULENT ACT*

73. Prysmian incorporates by reference the allegations contained in paragraphs 1-72 of its Complaint.

74. In addition to the breaches of contract by Defendants set forth above, the circumstances accompanying the breaches show a pattern of behavior and motive that demonstrate both a fraudulent intent relating to the breach and fraudulent acts accompanying the breach.

75. Prysmian has been damaged by these breaches and is entitled to all damages flowing from these breaches.

76. Defendants' conduct is willful and intentional, justifying an award of punitive damages for its breach of contract accompanied by a fraudulent act.

**WHEREFORE,** Prysmian demands the following relief:

A. On Causes of Action One, Two, and Three, judgment in its favor and against Defendants in an amount to be determined at trial but believed to be in excess of $4,500,000, plus punitive damages; reasonable attorneys' fees and costs; and prejudgment and post-judgment interest;

B. On Cause of Action Four, injunctive relief prohibiting BME from transferring the proceeds gained by its fraudulent acts;

C. On Cause of Action Four, injunctive relief prohibiting Enell from transferring any funds transferred to him by BME;

D. On Cause of Action Five, for prejudgment attachment of any and all property owned by Defendants, costs, prejudgment, and attorneys' fees;

E. On Cause of Action Six, for judgment in its favor and against Defendants in an amount to be determined at trial but believed to be in excess of $4,500,000, plus treble damages; reasonable attorneys' fees and costs, and prejudgment and post-judgment interest;

F. On Cause of Action Seven, for judgment in its favor and against BME in an amount to be determined at trial but believed to be in excess of $4,500,000, plus punitive damages; reasonable attorneys' fees and costs, and prejudgment and post-judgment interest; and

G. All further and other relief as this Court finds just and proper.

Respectfully submitted,

/s Michael A. Parente
Michael A. Parente (Federal No. 13358)
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC  29202
Phone: 803.771.8900
Fax: 803.253.8277
mparente@maynardnexsen.com

*Attorney for Plaintiff Prysmian*

August 28, 2023
Columbia, South Carolina